UNITED STATES of America,

v.

**Garry D. LLOYD, Appellant.**

No. 02–2394.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 3, 2003.

Decided Feb. 5, 2003.

---

Before SLOVITER, RENDELL, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Garry D. Lloyd, who was convicted of bank fraud in violation of 18 U.S.C. §§ 1344 and 2, appeals from his sentence and argues that the District Court erred in imposing a two-level sentencing enhancement for more than minimal planning. Lloyd argues that the enhancement was not justified because there was no evidence of either repeated acts or deception as required by U.S.S.G. § 2F1.1(b)(2)(A) (2000). We will affirm.

## I.

The parties are familiar with the relevant facts, and we set them forth briefly only as necessary. On January 18, 2000, Lloyd opened a business checking account at Commerce Bank in the name of Midguard Construction. He made an initial deposit of $9,800 and received 20 starter checks. On January 21, 2000, an individual, whom Lloyd identified to be either Carl or Gordon Smith, deposited a Bankers Trust Company Check in the amount of $148,393.39 into the Midguard account.

Over the next ten days Lloyd made the following withdrawals at various Commerce branches from the Midguard account using starter checks: $3,250 on January 21, 2000; $450 on January 24; $2,250 on January 25; and $2,800 on January 26.

On January 26, Lloyd returned to the branch at which he opened his account to cash a starter check for $90,000. The branch did not have sufficient funds available to pay that amount. Instead, it issued Lloyd an official bank check for that amount. Such a check operates like cash and its funds are guaranteed by the bank. Lloyd then went to a check cashing agen-cy, and cashed the $90,000 bank check for $50,000 cash and a $38,000 IOU. On January 27, Lloyd returned to this agency and cashed the IOU and another starter check in the amount of $45,000. Finally, on January 27 and 28, Lloyd wrote three other starter checks for a total of $6,475 made payable to various individuals, and a "no-signature" draft to AT & T wireless for $200.32.

On January 31, 2000, the $148,393.39 Bankers Trust check was returned unpaid to Commerce and was later determined to be a counterfeit. Shortly thereafter, United States Secret Service agents questioned Lloyd about the Midguard account and the counterfeit check. Lloyd told them that he had been asked by an old acquaintance who had access to a trust fund to negotiate trust fund monies through his bank account for a 10 percent fee. He refused to tell the agents the name of this acquaintance but said he assumed the money was wire transferred into the account, that he withdrew the trust fund money for his acquaintance from the Midguard account in two installments, one for $90,000 and one for $45,000, and that he delivered the money to his acquaintance in Pennsylvania.

Two weeks later, when Lloyd was again interviewed by the agents, he identified his acquaintance as Carl Smith, ostensibly from a bank surveillance photograph. He stated that he met Smith in New Jersey, not Pennsylvania, to turn over the money and that he had no way to contact Smith. In a later deposition, Lloyd stated that Smith had died, and that he had no knowledge of any check. Subsequently, Lloyd's fingerprints were identified on the counterfeit check. Smith has never been located.

Lloyd was convicted as charged following a trial by jury in federal court. At the sentencing hearing, the District Court con-

cluded that there was more than minimal planning involved in Lloyd's offense and adopted the recommendation of the probation department for a two-level increase under U.S.S.G. § 2F1.1(b)(2)(A).[1] With the enhancement, the resulting sentencing range was 46–57 months; without the enhancement the sentencing range would have been 37–46 months. On May 6, 2002, the District Court sentenced Lloyd to a term of 50 months imprisonment, stating that Lloyd's history demonstrated a "blatant disregard" for the criminal justice system. Lloyd was also to pay restitution in the amount of $141,889.16 and a special assessment of $100.

## II.

The only issue Lloyd raises on appeal is the enhancement. We review a district court's determination that an offense involved more than minimal planning under the clearly erroneous standard. More than minimal planning is defined as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1, cmt. n. 1(f) (2000). This court has contrasted the more than minimal planning term with " 'spur of the moment conduct, intended to take advantage of a sudden opportunity.' " *United States v. Monaco*, 23 F.3d 793, 797 (3d Cir.1994) (citation omitted). In *United States v. Wong*, 3 F.3d 667 (3d Cir.1993), we stated that "[t]he Guidelines target more than minimal planning because it is 'indicative of an intention and potential to do considerable harm,' and 'is often related to increased difficulties of detection and proof.' " *Id.* at 672 (quoting U.S.S.G. § 2B1.1, cmt. background (2000)).

The crux of Lloyd's arguments is that his actions involved no more than that is

necessary to complete a classic bank fraud. Lloyd reasons that the purpose of the upward adjustment when sentencing is to "winnow out the minority of really sophisticated schemers from the mass of ordinary thieves." Appellant Brief at 12 (quoting Frank O. Bowman, III, *Coping with "Loss": A Re-examination of Sentencing Federal Economic Crimes Under the Guidelines*, 51 Vand. L. Rev. 461, 499 (1998)). Even if Lloyd is correct that a pre-planned offense, as well as a spontaneous offense, does not necessarily warrant the more than minimal planning enhancement, this does not negate the appropriateness of such an enhancement here.

Lloyd's actions went beyond the minimum conduct required to establish a violation of the bank fraud statute. Unlike the defendants' conduct in *United States v. Archuletta*, 231 F.3d 682, 684–86 (10th Cir. 2000), and in *United States v. Phath*, 144 F.3d 146, 149–50 (1st Cir.1998), on which Lloyd relies, Lloyd's conduct involved a multitude of steps and his involvement was substantially greater than that of the defendants in those cases. As fully borne out by the facts set forth above and as the District Court found, Lloyd's offense involved acts repeated over a period of time.

Moreover, Lloyd took steps to conceal the offense. As noted in the commentary, there is more than minimal planning if "significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1, cmt. n. 1(f). The District Court found three acts of concealment: (1) Lloyd's wildy improbable version of events; (2) the nature of the counterfeit check; and (3) Lloyd's repeated statements regarding a wire-transfer.

---

1. The Government notes that Lloyd was sentenced using the 2000 version of the Sentenc-

ing Guidelines to avoid *ex post facto* concerns.

Lloyd told the investigators that an old acquaintance sent the supposed wire-transfer and at first, would not share this person's name with the investigators. Later, he identified the individual as Carl or Gordon Smith, but before investigators could question Smith they were told that he had, rather conveniently, died. The District Court stated that Lloyd's story was a "very important deception" because, if believed, it gave Lloyd cover and meant that he did not commit the crime.

Finally, Lloyd argues that no one was deceived because the investigators already knew the truth. For example, at the time when Lloyd told the Secret Service agents the funds had come into his account by wire transfer, the agents already knew this was incorrect. Lloyd's argument assumes that enhancement for more than minimal planning is not warranted unless the defendant's efforts to conceal were successful. There is no such requirement. All that must be established is that the efforts taken by the defendant merely have been intended to deceive.

### III.

We conclude that the District Court had sufficient evidentiary basis for its findings that Lloyd's offense involved repeated acts over a period of time and that Lloyd took substantial affirmative steps to conceal the fraud, thereby warranting the more than minimal planning enhancement. We will affirm.