In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 04-2520, 04-2632 & 04-2844

MARLON MCREYNOLDS, JAMIE L. THOMAS,
and DAVID BENNETT,

*Petitioners-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

---

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:03-cv-1360-LJM-VSS et al.—
**Larry J. McKinney**, *Chief Judge*.

---

SUBMITTED JANUARY 13, 2005—DECIDED FEBRUARY 2, 2005

---

Before EASTERBROOK, WOOD, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Marlon McReynolds, Jamie Thomas, and David Bennett were among the many persons convicted of participating in a large-scale cocaine-distribution enterprise. See *United States v. Dumes*, 313 F.3d 372 (7th Cir. 2002). After the judgments became final, they sought collateral relief under 28 U.S.C. §2255. They contended, among other things, that their sentences are invalid because the juries did not determine, beyond a reasonable doubt, the precise amounts of cocaine base (crack) and cocaine hydrochloride that led to their sentencing ranges. The district judge rejected these and related

arguments, concluding that the sixth amendment's jury-trial right, as understood in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not require the jury to determine any issue other than the thresholds that set the statutory maximum penalty—and, as the jury found that these three conspired to distribute more than 50 grams of crack, a quantity that exposed each to life imprisonment, see 21 U.S.C. §841(b)(1)(A)(iii), the court held that the sentences are lawful.

Like the trial itself, the district court's decision followed this circuit's authority. See *United States v. Nance*, 236 F.3d 820, 824-25 (7th Cir. 2000); *United States v. Smith*, 223 F.3d 554, 563-66 (7th Cir. 2000). But in *United States v. Booker*, No. 04-104 (U.S. Jan. 12, 2005), the Supreme Court held that defendants have a right to a jury trial on any disputed factual subject that increases the maximum punishment, and that the federal Sentencing Guidelines come within this rule to the extent that their operation is mandatory. This means that the conditions for a certificate of appealability under 28 U.S.C. §2253(c)(2) have been satisfied, as each appellant "has made a substantial showing of the denial of a constitutional right." The court therefore issues certificates of appealability on the question whether the proceedings violated the sixth amendment's right to jury trial. Because this is a collateral attack, however, we must consider the antecedent question whether the rights recognized by *Booker* apply retroactively on collateral review, and our certificates of appealability include this issue as well. See *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000).

Although the Supreme Court did not address the retro-activity question in *Booker*, its decision in *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584 (2002)—which, like *Booker*, applied *Apprendi*'s principles to a particular subject—is not retroactive on collateral review.

*Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule—which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules". *Ibid*. That is no less true of *Booker*—or for that matter *Apprendi* itself. We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful". That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.

The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. §3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

A procedural decision may be applied retroactively if it establishes one of those rare "watershed rules of criminal

procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin*, 124 S. Ct. at 252; *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion). The Court held in *DeStefano v. Woods*, 392 U.S. 631 (1968), and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. See also *Curtis*, 294 F.3d at 843-44.

We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, 124 S. Ct. 2531 (2004), came down, is the appropriate dividing line; *Blakely* reserved decision about the status of the federal Sentencing Guidelines, see *id*. at 2538 n.9, so *Booker* itself represents the establishment of a new rule about the federal system. Petitioners' convictions and sentences became final well before *Booker* was issued, and its approach therefore does not govern these collateral proceedings.

Because this decision affects a substantial volume of post-*Booker* litigation, it was circulated before release to all active judges. See Circuit Rule 40(e). No judge favored a

hearing en banc.

We have considered petitioners' remaining arguments and conclude that they do not present substantial constitutional issues supporting certificates of appealability.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*