**Miguel GUZMAN, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Docket No. 03–2446–PR.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 19, 2004.

Decided: April 8, 2005.

Ruth M. Liebesman, New York, NY, for Appellant.

Daniel L. Stein, Assistant United States Attorney, Southern District of New York, New York, N.Y. (David N. Kelley, United States Attorney, and Robin L. Baker and Laura Grossfield Birger, Assistant United States Attorneys, on the briefs), for Appellee.

Before: JACOBS, SOTOMAYOR, and HALL, Circuit Judges.

JACOBS, Circuit Judge.

Petitioner Miguel Guzman appeals from the denial of postconviction relief by the United States District Court for the Southern District of New York (Scheindlin, *J.*). We previously affirmed the judgment of the district court, but held the mandate pending the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We now hold that *Booker* does not apply retroactively to cases on collateral review, and therefore affirm.

## BACKGROUND

Guzman was convicted in 1998 on numerous racketeering and drug-trafficking counts and sentenced to six life terms plus 145 years; the life terms were imposed pursuant to the Federal Sentencing Guidelines, and were based in part on factual findings made by the district judge. On March 23, 2001, this Court affirmed the judgment, and on October 1, 2001, the Supreme Court denied certiorari, rendering Guzman's conviction final. *See Beard*

*v. Banks*, —— U.S. ——, ——, 124 S.Ct. 2504, 2510, 159 L.Ed.2d 494 (2004).

Guzman subsequently filed a motion pursuant to 28 U.S.C. § 2255 collaterally attacking his sentence, and was denied relief in an order entered by Judge Scheindlin on June 20, 2003. We affirmed by order dated October 25, 2004, but held the mandate pending the Supreme Court's decision in *United States v. Booker*. *Guzman v. United States*, 112 Fed.Appx. 766, 2004 WL 2378810 (2d Cir. Oct.25, 2004). After *Booker* was issued, we solicited briefing on the applicability of *Booker* to Guzman's appeal.

We now expand the certificate of appealability ("COA") to include the issues raised by *Booker*. *See* 28 U.S.C. § 2253(c)(2) (COA "may issue . . . if the applicant has made a substantial showing of the denial of a constitutional right"); *Slack v. McDaniel*, 529 U.S. 473, 483–84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (under § 2253(c)(2), COA appropriate where, *inter alia*, reasonable jurists could debate the proper resolution of the issue); *see also Green v. Mazzucca*, 377 F.3d 182, 183 (2d Cir.2004) (*per curiam*) (observing that this Court can "expand a petitioner's COA when appropriate"). For the following reasons, we hold that *Booker* is not retroactive: it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued.

## DISCUSSION

*Booker* [i] held that the Guidelines violated the Sixth Amendment to the extent that they allowed the maximum sentence authorized by a guilty plea or a verdict to be increased based on findings of fact (other than the fact of a prior conviction) made by the judge, —— U.S. at —— – ——, 125 S.Ct. at 755–56; [ii] held that the remedy was to make the Guidelines advisory, *id.* at

756–57; and [iii] expressly made these holdings applicable to all cases pending on direct review, *id.* at 769. But *Booker* "made no explicit statement of retroactivity to collateral cases." *Green v. United States*, 397 F.3d 101, 103 (2d Cir.2005) (*per curiam*).

The several courts of appeals that have considered the retroactivity question have held that *Booker* is not retroactive. *See Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.2005); *United States v. Price*, 400 F.3d 844, 845 (10th Cir.2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir.2005) (*per curiam*); *see also Hamdani v. United States*, 2005 WL 419727, at *2 (E.D.N.Y. Feb. 22, 2005) (Trager, *J.*). We agree.

■ Under the analysis set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), and as later developed, a new rule of constitutional law does not apply retroactively to cases on collateral review unless the rule is substantive or a "watershed" rule of procedure that affects "the fundamental fairness and accuracy of the criminal proceeding." *Schriro v. Summerlin*, —— U.S. ——, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004) (quotation omitted).

### A. *Booker Established a New Rule*

■ "[A] case announces a new rule if the result was not *dictated* by precedent . . . ." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. Precedent "dictates" the result in a subsequent case where that result would be " 'apparent to *all reasonable jurists.*' " *Banks*, —— U.S. at ——, 124 S.Ct. at 2511 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997)) (emphasis added). Guzman argues

that the result in *Booker* was compelled by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which had held that any fact (other than the fact of a prior conviction) that triggers a sentence in excess of the prescribed statutory maximum must be proved to a jury beyond a reasonable doubt. If *Booker* were simply *Apprendi* again, we would not need to determine the retroactivity of *Booker* under *Teague:* since Guzman's conviction was not final when *Apprendi* issued, Guzman would be afforded any relief he could get under *Booker.*

However, the result in *Booker* was not dictated by *Apprendi* or, for that matter, the Court's later decision in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (striking down part of Washington State's sentencing scheme under *Apprendi*). It cannot be said that the result in *Booker* was apparent to "all reasonable jurists"; in *Booker* itself, dissenters undertook to explain why the holding in *Booker* was not compelled by *Apprendi* or *Blakely. See Booker,* —— U.S. at —— – ——, 125 S.Ct. at 805–07 (Breyer, *J.,* joined by Rehnquist, *C.J.,* and O'Connor & Kennedy, *JJ.,* dissenting in part) (arguing that "[l]egal logic" did not require the extension of *Apprendi* and *Blakely* to the Guidelines "for there are key differences"). Moreover, "[t]hat the federal judiciary [was] deeply divided on the issue of whether the rule announced in *Blakely* applie[d] to the Federal Guidelines lends further support to the conclusion that *Booker* announced a new rule." *Humphress,* 398 F.3d at 861 (citing cases). Since *Booker* announced a new rule, we must decide whether either of the *Teague* exceptions to nonretroactivity applies.

### B. *Booker Did Not Establish a Substantive Rule*

■ Generally, substantive rules "narrow the scope of a criminal statute by interpreting its terms" or "place particular conduct or persons covered by [a criminal] statute beyond the State's power to punish." *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2522. Such rules "apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id.* at 2522–23 (quotation omitted).

■ In *Summerlin,* the Court was faced with whether a substantive rule was established by *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty," *id.* at 609, 122 S.Ct. 2428. The Court reasoned that because *Ring* did not "alter the range of conduct ... subjected to the death penalty," but merely "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment," the rule was a "prototypical procedural rule[.]" *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2523. Likewise, *Booker* did not alter the range of conduct subject to any sentence. *See McReynolds,* 397 F.3d at 481 ("No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced."); *see also Coleman v. United States,* 329 F.3d 77, 87 (2d Cir. 2003) (holding that *Apprendi* established a procedural rule because "[t]he substance of the crime remains the same; only the trier of fact and the standard of proof have changed"). In short, *Booker* did not establish a substantive rule.

### C. *Booker Did Not Establish a Watershed Rule of Procedure*

■ A new procedural rule applies retroactively only if it is a watershed rule

"implicating the fundamental fairness and accuracy of the criminal proceeding." *Summerlin,* —— U.S. at ——, 124 S.Ct. at 2523 (quotation omitted). Such a rule "must be one 'without which the likelihood of an accurate conviction is seriously diminished.'" *Id.* (quoting *Teague,* 489 U.S. at 313, 109 S.Ct. 1060). This "class of rules is extremely narrow." *Id.* No such watershed rule has been identified by the Court since that standard was adopted. *See Coleman,* 329 F.3d at 89. The Court has pointed to *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (establishing defendants' right to counsel in criminal trials for serious crimes), to illustrate the type of case that would fit this exception. *See Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

■ *Booker* did not establish a watershed rule because "the only change [is] the degree of flexibility judges ... enjoy in applying the guideline system." *McReynolds,* 397 F.3d at 481; *see also Coleman,* 329 F.3d at 89 (holding that *Apprendi* did not announce a watershed rule, in part because it did not implicate "bedrock procedural elements" essential to fundamental fairness, "[a]lthough [it] altered certain aspects of indictments, trials, and sentencing proceedings").

In *Summerlin,* the Court held that *Ring* did not establish a watershed rule because it was

implausible that judicial factfinding so seriously diminishes accuracy as to produce an impermissibly large risk of injustice. When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy.

—— U.S. at ——, 124 S.Ct. at 2525 (quotation and emphasis omitted). That reasoning applies here *a fortiori.* The procedural defect identified in *Booker* is that sentence-enhancing factors were found by judges rather than by juries, and by a preponderance rather than beyond a reasonable doubt; but the remedy—to render the Guidelines advisory—vested greater discretion in judges, not less. *See McReynolds,* 397 F.3d at 481 ("The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the Sixth Amendment so long as the guideline system has some flexibility in application.").

Finally, the chief goal of the mandatory Guidelines project was to *reduce* the "disparity and inherent unfairness" caused by discretionary sentencing. Kenneth R. Feinberg, *Federal Criminal Sentencing Reform: Congress and the United States Sentencing Commission,* 28 Wake Forest L.Rev. 291, 294–96 (1993); *accord Booker,* —— U.S. at —— – ——— & n. 14, 125 S.Ct. at 783–86 & n. 14 (Stevens, *J.,* joined by Souter, *J.,* dissenting in part); Stephen Breyer, *Federal Sentencing Guidelines Revisited,* 11 Fed. Sent. Rep. 180 (1999), *available at* 1999 WL 730985, at *1 ("The Guidelines sought greater fairness and honesty in sentencing. In seeking 'greater fairness,' Congress, acting in bipartisan fashion, intended to respond to complaints of unreasonable disparity in sentencing—that is, complaints that differences among sentences reflected not simply different offense conduct or different offender history, but the fact that different judges imposed the sentences."). We cannot say that the Guidelines actually advanced that goal, and mitigated unwarranted disparity and unfairness. By the same token, we cannot assume that the mandatory Guidelines system under which Guzman was sentenced seriously diminished the accuracy or fun-

damental fairness of the sentencing process. In sum, the rule established by *Booker* "has none of the primacy and centrality of the rule adopted in *Gideon* or other rules which may be thought to be within the exception." *Saffle,* 494 U.S. at 495, 110 S.Ct. 1257.

## CONCLUSION

For the reasons stated above, *Booker* is not retroactive, *i.e.,* it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued. The judgment of the district court is AFFIRMED. The Clerk is directed to issue the mandate forthwith.