

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2005

# Lloyd v. USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3549

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lloyd v. USA" (2005). *2005 Decisions.* Paper 1092.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1092

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3549

_____

GARRY D. LLOYD,
                              Appellant

v.

UNITED STATES OF AMERICA

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 04-cv-03687
District Judge:  The Honorable Joseph E. Irenas

_____

Submitted Under Third Circuit LAR 34.1(a)
April 7, 2005

_____

Before: BARRY, AMBRO, and GREENBERG, <u>Circuit Judges</u>

_____

(Opinion Filed:  May 17, 2005)

_____

Richard Coughlin, Esq.
Anne E. Blanchard, Esq.
Office of the Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, New Jersey 08102

<u>Counsel for Appellant</u>

1

George S. Leone, Esq.
Office of the United States Attorney
970 Broad Street, Room 700
Newark, New Jersey 07102

Counsel for Appellee

---

OPINION OF THE COURT

---

BARRY, Circuit Judge

All courts of appeals to have considered the issue of whether the rule of law announced in *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005), applies retroactively to prisoners who were in the initial § 2255 motion stage as of the date that *Booker* issued have concluded that it does not. We now join those courts.

## I. BACKGROUND

Appellant Garry D. Lloyd was charged with bank fraud, in violation of 18 U.S.C. §§ 1344 and 2, and was convicted by a jury. When determining Lloyd's sentence, the District Court found facts, under a preponderance of the evidence standard, that had not been found by the jury, including (1) that Lloyd had engaged in more than minimal planning; (2) that Lloyd had caused a financial loss of more than $120,000 but less than $200,000; and (3) that Lloyd had committed an obstruction of justice. Application of the Federal Sentencing Guideline enhancements called for by these fact-findings resulted in a total offense level of 17 and, given Lloyd's criminal history category of V, a Guideline imprisonment range of forty-six to fifty-seven months. The District Court sentenced Lloyd, as relevant here, to fifty months imprisonment, followed by five years of supervised release. We affirmed the judgment. *See United States v. Lloyd*, No. 02-2394, 58 Fed. Appx. 928 (3d Cir. 2003). Lloyd did not

2

seek a writ of certiorari, and his conviction became final on May 6, 2003.

On June 24, 2004, the Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. __, 124 S.Ct. 2531 (2004). The Court held that Washington State's determinate sentencing scheme, a scheme similar to the Federal Sentencing Guidelines, violated the Sixth Amendment right to a jury trial. *Id.* at 2538. *Blakely's* reasoning was that judges were imposing sentences that were not based solely on facts reflected in the verdict of the jury or admitted by the defendant, and were using a preponderance of the evidence standard to find the facts necessary to that imposition. *Id.* at 2536-39.

On August 3, 2004, Lloyd filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. He argued that the facts supporting the enhancements he received were not found by a jury beyond a reasonable doubt and, thus, that the sentence imposed was in violation of *Blakely*. Moreover, he argued, although his motion was filed more than a year after his conviction became final, and therefore would otherwise be barred by the one-year limitation period of § 2255, *Blakely* created a new right. As such, Lloyd reasoned that the one-year period should run from the date of the *Blakely* decision, thereby rendering his motion timely. *See* 28 U.S.C. § 2255 para. 6(3).

The District Court disagreed, and dismissed the § 2255 motion. *Blakely*, the Court explained, did not rule that the Federal Sentencing Guidelines were unconstitutional, but even if it had done so, there had been no determination, as is required under § 2255 para. 6(3), that *Blakely* applies retroactively to cases on collateral review. *Booker*, of course, had yet to be decided.

Lloyd now appeals, post-*Booker*, to this Court. The District Court had jurisdiction pursuant to 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).

3

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year period of limitation applies to a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2244(d)(1). Section 2255 states, in relevant part, that the limitation period shall run from the latest of: "(1) the date on which the judgment of conviction becomes final . . . [or] (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255 para. 6. Because Lloyd concededly filed his motion more than a year after his conviction became final, his motion would only have been timely filed if the Supreme Court announced a newly recognized right or a "new rule" that has been made "retroactively applicable to cases on collateral review." *See id.*

Lloyd initially argued to us that his sentence was imposed in violation of *Blakely*. That argument is now, of course, governed by the intervening decision, issued on January 12, 2005, in *Booker*, which concluded that the holding in *Blakely* applies to the Federal Sentencing Guidelines. 543 U.S. at __, 125 S.Ct. at 756.[1] We hardly break new ground when we note that *Booker* was decided by two opinions. The first, authored by Justice Stevens, held that because the Federal Sentencing Guidelines allowed judges to find facts (other than the fact of a prior conviction) that lead to a greater sentence than that

---

[1]We note in passing that some courts, when considering the issues now before us, refer to the "*Blakely* rule" and others refer to the "*Booker* rule." We believe it is appropriate to refer to the "*Booker* rule." It is the date on which *Booker* issued, rather than the date on which *Blakely* issued, that is the "appropriate dividing line." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). *Blakely*, as the Court of Appeals for the Seventh Circuit pointed out, reserved decision about the status of the Federal Sentencing Guidelines, and *Booker* established a new rule for the federal system. *See id.*

4

authorized by the facts established by a plea of guilty or a jury verdict, the Guidelines were unconstitutional. The second, authored by Justice Breyer, devised the remedy of excising the statutory provision that made the Guidelines mandatory.

Generally, a new rule of criminal procedure "will not be applicable to those cases which have become final before the new [rule is] announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989). This bar applies equally to a federal habeas corpus petitioner who wishes to collaterally attack his conviction, unless an exception applies. Accordingly, in order for Lloyd to benefit from *Booker*, it must be determined that the rule announced therein applies retroactively.

Under *Teague,* the determination of whether a rule of criminal procedure applies retroactively to a case on collateral review requires a three-step inquiry. In terms of this case, then, we must first determine if Lloyd's conviction became final prior to the Supreme Court's decision in *Booker*. *See Beard v. Banks*, 542 U.S. __, 124 S. Ct. 2504, 2510 (2004). Second, we must determine whether the rule announced in *Booker* qualifies as "new."[2] *See id.* Third, if those two conditions are satisfied, we must examine whether the new procedural rule qualifies under one of *Teague's* two narrow exceptions to the non-retroactive application of such rules. *See id.* As relevant here, a new rule of criminal procedure will apply retroactively if it is deemed a "watershed [rule] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 2513 (internal quotation and citation omitted).

---

[2]*Teague* differentiates between new substantive rules and new procedural rules. *See Teague*, 489 U.S. at 311. The Supreme Court has unequivocally stated that the *Apprendi* line of cases, of which *Booker* is surely one, announced a new rule of criminal procedure. *Schriro v. Summerlin*, 542 U.S. ___, 124 S.Ct. 2519, 2523-24 (2004).

5

## A.

It bears repeating, and the parties do not dispute, that Lloyd's conviction became final on May 6, 2003. *See Kapral v. United States*, 166 F.3d 565, 572 (3d Cir. 1999) (explaining that when a defendant does not seek a writ of certiorari, the judgment of conviction becomes final upon the expiration of the time allowed for certiorari review); *see also* 28 U.S.C. § 2101(c) (allowing for ninety days, post-conviction, for certiorari review). This date is thirteen months prior to the issuance of the decision in *Blakely*, and twenty months prior to the issuance of the decision in *Booker*. Clearly, then, both *Blakely* and *Booker* would have to be given retroactive effect in order for them to be applied to Lloyd's case.

## B.

Neither do the parties dispute that the *Booker* rule constituted a new rule of criminal procedure for purposes of *Teague*. We agree, and believe it appropriate to briefly explain our reasoning.

To determine if the rule announced in *Booker* was "new," we are required to review the "legal landscape" at the time Lloyd's conviction became final to see if the rule "was *dictated* by the then existing precedent–whether, that is, the unlawfulness of respondent's [sentence] was apparent to all reasonable jurists." *Beard*, 542 U.S. at ___, 124 S.Ct. at 2511 (internal quotation and citation omitted) (emphasis in original). If it was not "dictated" by past precedent, then *Booker* created a new rule.

Prior to *Blakely* and *Booker*, *Apprendi* established that, at sentencing, a judge could enhance a sentence based on facts not admitted by the defendant or found by the jury, so long as the enhancement did not increase the defendant's sentence beyond the prescribed statutory maximum. *Apprendi v. New Jersey*, 530

6

U.S. 466, 490 (2000).[3]  *Blakely* simply applied *Apprendi* to a different statutory scheme, clarifying "that 'the statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."  *Blakely*, 542 U.S. at __, 124 S.Ct. at 2537 (internal citation omitted) (emphasis in original).[4]  The *Booker* Court, of course, subsequently applied *Blakely's* holding to the Federal Sentencing Guidelines.

Every court of appeals to have considered the issue has concluded that, whether denominated as the "*Blakely* rule" or the "*Booker* rule," that rule was "new."  For example, the Court of Appeals for the Tenth Circuit reasoned that while *Blakely* interpreted *Apprendi,* it was not *compelled* by *Apprendi*.  *See United States v. Price*, 400 F.3d 844, 848-49 (10th Cir. 2005).  That is, post-*Apprendi* but pre-*Blakely*, a court would not have believed itself compelled to conclude that what became the "*Blakely* rule" was constitutionally required.  *Blakely* changed courts' understanding of *Apprendi*'s statutory maximum and announced a new rule.

The Court of Appeals for the Sixth Circuit also concluded that what it called the *"Booker* rule" was "clearly new."  *See Humphress v. United States*, 398 F.3d 855, 861 (6th

---

[3]The courts of appeals have unanimously held that while *Apprendi* set forth a new rule of criminal procedure, that rule is not retroactively applicable to cases on collateral review where the judgments had already become final when *Apprendi* was decided.  We so held in *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003).

[4]Justice Stevens, in *Booker*, explained the holding in *Blakely*: "The [judge's] determination that the defendant acted with deliberate cruelty, like the determination in *Apprendi* that the defendant acted with racial malice, increased the sentence that the defendant could have otherwise received.  Since this fact was found by a judge using a preponderance of the evidence standard, the sentence violated Blakely's Sixth Amendment rights."  543 U.S. __, __, 125 S.Ct. 738, 749 (2005).

Cir. 2005). That rule, the Court found, "was not dictated by precedent" when Humphress's conviction became final, and "it would not have been apparent to 'all reasonable jurists' that his conviction was unlawful." *Id.* Moreover, the Court continued, prior to *Booker*, the federal judiciary had been deeply divided as to whether *Blakely* applied to the Federal Sentencing Guidelines, and conflicting opinions issued as to whether *Blakely* rendered those Guidelines unconstitutional. *Id.* at 861-62. Differences among reasonable jurists, subsequently resolved by a Supreme Court ruling, suggest that the rule resolving those differences was "new." *Id.*; *see also Beard*, 542 U.S. at __, 124 S.Ct. at 2512-13 (noting that when four justices dissent, this may be sufficient to show that a new rule was announced).

Most recently, the Court of Appeals for the Second Circuit has weighed in, concluding that the result in *Booker* "was not dictated by *Apprendi* or, for that matter, the Court's later decision in *Blakely*. . . ." *Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005). It "cannot be said that the result in *Booker* was apparent to 'all reasonable jurists.'" *Id.* *Booker*, the Court concluded, announced a new rule. *Id.*

C.

And so we turn to whether *Booker's* new rule of criminal procedure qualifies under the second exception to *Teague*'s non-retroactivity bar.[5] *Teague's* prohibition against the retroactive application of new rules of criminal procedure does not apply to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Beard*, 542 U.S. at __, 124 U.S. at 2513 (internal quotation and citation omitted). We explained in *United States v. Swinton* that *Teague*'s second exception is reserved for watershed rules that

---

[5]The first exception applies to a new rule that "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307 (internal quotation and citation omitted). *Booker* does not implicate this exception.

8

"not only improve the accuracy of trial, but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." 333 F.3d 481, 487 (3d Cir. 2003) (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990)) (emphasis in original). To say that this exception is extremely narrow is to understate the issue for, as the Supreme Court itself has noted, it has "yet to find a new rule that falls under the *Teague* exception." *Beard*, 542 U.S. at __, 124 S. Ct. at 2513-14.[6]

Every federal court of appeals to have considered whether *Booker*'s new rule constituted a "watershed rule" that would satisfy *Teague*'s second exception has held that it does not and, thus, has held that *Booker* does not apply retroactively to cases on collateral review. *See, e.g.*, *Guzman,* 404 F.3d at 143-44 ; *Varela v. United States,* 400 F.3d 864, 868 (11th Cir. 2005)*; Price*, 400 F.3d at 845; *Humphress*, 398 F.3d at 857*; McReynolds*, 397 F.3d at 481. We join those courts.[7]

---

[6]Including the *Batson* rule at issue in *Teague*, the Court has refused to apply twelve new rules of criminal procedure retroactively on collateral review. *See United States v. Mandanici*, 205 F.3d 519, 529 (2d Cir. 2000) (collecting ten such cases); *see also Summerlin*, 542 U.S. at __, 124 S.Ct. at 2525-26. Indeed, as the *Guzman* Court noted, "[n]o such watershed rule has been identified by the Court since that standard was adopted." *Guzman*, 404 F.3d at 143.

[7]We have recently held, in the context of a prisoner's request under 28 U.S.C. § 2244 for leave to file a second or successive motion to vacate his sentence under § 2255, that the prisoner cannot make a "*prima facie* showing" under § 2244(b)(3)(C) that *Booker* constitutes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *In re Olopade*, 403 F.3d 159, 164 (3d Cir. 2005) (quoting 28 U.S.C. § 2255). We concluded that the Supreme Court has not held that *Booker* is applicable to cases on collateral review, that no combination of Supreme Court decisions dictates that *Booker* has retroactive force on collateral review, and that the Court's holding in *Summerlin* "strongly suggests" that *Booker* is not retroactively applicable to cases on

At the outset, we reject the government's contention that the "watershed rule" exception only applies to new procedural rules that improve the accuracy of the guilt or innocence of a defendant. It is just not so that because *Booker* only impacts sentencing, the "watershed rule" exception cannot apply.

In *Schriro v. Summerlin*, the Supreme Court examined whether the holding of *Ring v. Arizona*, 536 U.S. 584 (2002), applied retroactively to cases on collateral review. 542 U.S. __, 124 S.Ct. 2519, 2524-25. *Ring*, which was decided in the wake of *Apprendi*, struck down an Arizona law permitting a judge, rather than a jury, to find certain aggravating factors beyond a reasonable doubt that would warrant imposition of the death penalty. *Id.* at 2522. The *Summerlin* Court emphasized that the question before it was "whether judicial factfinding so *seriously* diminishes accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Id.* at 2525 (internal quotation marks and citation omitted) (emphasis in original). Because the evidence as to whether juries are more accurate factfinders than judges was "simply too equivocal," *id.*, the Court could not say that the rule announced in *Ring* so significantly improved accuracy that it should apply retroactively to cases already final on direct review. *See id.*

*Summerlin* leaves little doubt that the "watershed rule" exception can apply to a procedural rule that only affects sentencing; indeed, were it otherwise, the Court would not have needed to examine whether *Ring's* holding applied retroactively. More importantly, *Apprendi* and its progeny have made clear that distinguishing between a conviction and a sentence obscures what matters for constitutional purposes–namely, facts that increase a defendant's punishment. *See, e.g.*, *Booker*, 543 U.S.

collateral review. *Id.* at 162-63.

But we were not required to do a *Teague* analysis in *Olopade*; rather, we were required to read § 2255 in conjunction with § 2244(b)(3)(C) to determine whether a second or successive motion should be certified. *See id.* at 161-62. We must, therefore, address the "watershed rule" exception here.

at __, 125 S.Ct. at 748 (explaining that the fact that a state labels a crime a "'sentencing enhancement' rather than a separate criminal act" is irrelevant for constitutional purposes); *see also Ring*, 536 U.S. at 610 (Scalia, J., concurring) ("[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to the imposition of the level of punishment that the defendant receives–whether the statute calls them elements of the offense, sentencing factors, or Mary Jane–must be found by the jury beyond a reasonable doubt."). Accordingly, while the *Summerlin* Court held that *Ring* does not apply retroactively, it did not do so because *Ring* merely affected sentencing decisions.

And so we move to Lloyd's main argument: that by requiring the factfinder to determine sentencing factors beyond a reasonable doubt, *Booker* necessarily qualifies as a new rule of criminal procedure "without which the likelihood of an accurate conviction is seriously diminished." *Teagu*e, 489 U.S. at 313. After all, the argument goes, the Supreme Court has long held that the "reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship*, 397 U.S. 358, 363 (1970). Furthermore, "a person accused of a crime . . . would be at a severe disadvantage . . [,] amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case." *Id.* (internal quotation and citation omitted). The "use of the reasonable doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" *Id.* at 364 (internal citation omitted).

It would be one thing if we were only dealing with Justice Stevens's opinion in *Booker*, which held the Federal Sentencing Guidelines unconstitutional because their mandatory nature required judges to find facts that increased sentences based on a preponderance of the evidence. But in the opinion authored by Justice Breyer, the unconstitutionality of the Guidelines was remedied by excising the provision, at 18 U.S.C. § 3553(b)(1),

11

that made their application mandatory. *See Booker*, 543 U.S. at __, 125 S. Ct. at 756-757. By creating an advisory federal sentencing regime, the *Booker* Court did not announce a new rule of criminal procedure that significantly increases the "certitude" or "accuracy" of the sentencing process. As the Court of Appeals for the Seventh Circuit put it, *Booker* was not a "'watershed' change that fundamentally improves the accuracy of the criminal process" because defendants' sentences "would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system." *McReynolds*, 397 F.3d at 481; *see also Guzman*, 404 F.3d at 143-44; *United States v. Ordaz*, 398 F.3d 236, 239 (3d Cir. 2005) ("The net result [of *Booker*] was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines for the information and use of the district courts in whom discretion has now been reinstated.").

## III. CONCLUSION

Because *Booker* announced a rule that is "new" and "procedural," but not "watershed," *Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* issued. We will, therefore, affirm the August 11, 2004 order of the District Court dismissing Lloyd's § 2255 motion.