**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-3371

_____

HARVEY A. REINHOLD,

Appellant

v.

GERALD ROZUM, SUPERINTENDENT, SCI
SOMERSET;
THE DISTRICT ATTORNEY OF THE COUNTY OF
LANCASTER, PA;
THE ATTORNEY GENERAL OF THE
COMMONWEALTH OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No. 5-07-cv-05154
District Judge: The Honorable John R. Padova

_____

Argued March 9, 2010

Before:  AMBRO,  SMITH, and MICHEL,[*]
*Circuit Judges*

(Filed:  April 14, 2010)


Diana Lynn Stavroulakis, Esq. (Argued)
262 Elm Court
Pittsburgh, PA 15237
        Counsel for Appellant

Susan E. Moyer, Esq. (Argued)
Assistant District Attorney
Office of the District Attorney
Lancaster County Courthouse
50 North Duke Street
P.O. Box 83480
Lancaster, PA 17608-3480
        Counsel for Appellees

------------

OPINION

------------

------------

[*] The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

SMITH, *Circuit Judge*.

This is a habeas action by a prisoner in state custody. The only question for our review is whether he timely filed his petition, a question which turns on whether the Supreme Court's decision in *Cunningham v. California*, 549 U.S. 270 (2007), applies retroactively to cases on collateral review. We hold that *Cunningham* is not retroactively applicable, and will affirm the judgment of the District Court.

I.

In 1994, Petitioner Harvey Reinhold was convicted in Pennsylvania state court of kidnapping and related crimes, and was sentenced in the aggregate to 20 to 51 years in prison. The conviction and sentence were affirmed on direct appeal, and successive state collateral relief petitions were denied in the years following his conviction. Reinhold filed this federal action under 28 U.S.C. § 2254 on November 11, 2007, more than ten years after his conviction became final. Relying on *Cunningham*, he contends that his constitutional right to a trial by jury was violated when the sentencing judge relied on facts not found by a jury beyond a reasonable doubt to increase his sentence above Pennsylvania's standard

3

sentencing range.

The District Court denied his habeas petition, concluding that it was untimely. Specifically, the District Court concluded that the Supreme Court's decision in *Cunningham* was not retroactively applicable to Reinhold's case. However, it granted a certificate of appealability for us to consider this question.

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254, and we have jurisdiction under §§ 1291 and 2253. Our review of an order denying a habeas corpus petition as time-barred is plenary. *McAleese v. Brennan*, 483 F.3d 206, 212 (3d Cir. 2007) (citation omitted).

## II.

The statute of limitations for habeas petitions by prisoners in state custody is codified in 28 U.S.C. § 2244(d).[1] Reinhold concedes, as he must, that he filed this

---

[1] The statute provides, in relevant part, as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of

4

petition more than one year from the date his conviction became final. *Id.* § 2244(d)(1)(A).[2]  He did, however, file the petition within one year of the Supreme Court's decision in *Cunningham*.  The issue for our consideration

> a State court.  The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;[ or]
> >
> > . . . .
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2244(d)(1)(A)–(C).

[2] This is true even excluding the time his multiple state collateral relief petitions were pending, as is required by 28 U.S.C. § 2244(d)(2).

5

is whether *Cunningham* recognized a new constitutional right, and, if so, whether it is retroactively applicable to cases on collateral review. *Id.* § 2244(d)(1)(C).

A.

The *Cunningham* decision is one of a line of Supreme Court cases on sentencing, of which the seminal case is *Apprendi v. New Jersey*, 530 U.S. 466 (2000). There, the defendant was convicted of a crime punishable by five to ten years in prison; however, he was sentenced to twelve years based on the fact, not found by a jury, that he committed the crime with the purpose of intimidating protected groups. *Id.* at 470–71. The Court concluded that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

Two years later, the Supreme Court considered a similar question in *Ring v. Arizona*, 536 U.S. 584 (2002). In *Ring*, the jury was instructed on both premeditated murder and felony murder for a death arising from an armed robbery. The jury could not reach a verdict on premeditated murder, but convicted Ring of felony murder, for which the maximum penalty, absent aggravating circumstances and the findings to support them, was life

6

imprisonment. *Id.* at 591–92. In summing up the *trial* evidence, the Arizona Supreme Court declared: "For all we know from the trial evidence, [Ring] did not participate in, plan, or even expect the killing. This lack of evidence no doubt explains why the jury found Defendant guilty of felony, but not premeditated, murder." *State v. Ring*, 25 P.3d 1139, 1152 (Ariz. 2001). Yet after the trial and before Ring's sentencing, another person involved in the robbery pled guilty to a reduced charge and agreed to cooperate with the State. *Ring*, 536 U.S. at 593. At the sentencing hearing, held by law before the judge alone, the accomplice testified that Ring was planning the robbery for weeks before it occurred, shot the victim with a rifle equipped with a homemade silencer, and directed the getaway. *Id.* The sentencing judge found two statutorily enumerated aggravating factors: "that Ring committed the offense in expectation of receiving something of 'pecuniary value,'" and "that the offense was committed 'in an especially heinous, cruel or depraved manner.'" *Id.* at 594–95 (citations omitted). The sentencing judge concluded that these two aggravating circumstances, based on testimony not heard by the jury, outweighed any mitigating circumstances, thereby warranting the imposition of the death penalty. *Id.* at 595, 592–93. The Supreme Court reached the same result as it did in *Apprendi* and held that imposing the greater sentence only after judicial fact

7

finding was unconstitutional. *Id.* at 609.

*Blakely v. Washington*, 542 U.S. 296 (2004), took up the question of what constitutes a "statutory maximum" for *Apprendi* purposes. Blakely kidnapped his estranged wife at knifepoint and drove her into Montana, threatening her with a shotgun. *Id.* at 298. He pled guilty to reduced charges and admitted in his plea only the elements of the offenses. *Id.* at 298–99. The statutory maximum for these crimes was ten years under Washington state law, but a sentence above a "standard range" of 49 to 53 months was prohibited absent the sentencing judge finding "substantial and compelling reasons justifying an exceptional sentence" up to ten years. *Id.* at 299 (quotation omitted). Blakely was sentenced well above the standard range upon the sentencing judge's finding that he acted with "deliberate cruelty." *Id.* at 303. The Supreme Court held that the "standard range" was the statutory maximum for *Apprendi* purposes, and thus any facts found justifying a sentence above the standard range must be found by a jury. *Id.* at 303–04.

Finally, *United States v. Booker*, 543 U.S. 220 (2005), applied the teachings of *Apprendi*, *Ring*, and *Blakely* to the federal sentencing regime. The Court held that the upper end of the then-mandatory federal sentencing

8

guidelines, even though it was below the maximum sentence established by Congress, was the statutory maximum for *Apprendi* purposes. Thus, judicial fact finding used to justify a sentence above the guidelines range violated the Sixth Amendment. *Booker*, 543 U.S. at 233–35 (opinion of Stevens, J.).[3]

Two years after *Booker*, the Supreme Court decided *Cunningham*, 549 U.S. 270. That case dealt with California's penal code, which established a low-, mid-, and upper-range sentence for the crimes codified therein. These were not ranges within which the sentencing judge could exercise his discretion; rather, they were fixed points the sentencing judge was to choose from. *Id.* at 292. For example, Cunningham's crime of continuing sexual abuse had a lower term of 6 years, a middle term of 12 years, and an upper term of 16 years. *Id.* at 275. The penal code obliged the sentencing judge to impose a middle-term sentence unless the judge, not the jury, found mitigating or aggravating factors. *Id.* The Supreme Court concluded that California's sentencing system was unconstitutional

_____

[3] Justice Breyer, speaking for a different majority, devised the remedy of rendering the guidelines advisory to alleviate this constitutional concern. *See Booker*, 543 U.S. at 245 (opinion of Breyer, J.).

9

because the judge was required to find the facts necessary to impose a higher sentence than was permissible based on the jury's verdict alone. *Id.* at 288–89, 292–93.

B.

The test for determining the retroactivity of a rule announced by the Supreme Court is drawn from *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion). It is a three-part test: "First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually 'new.' Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity." *Beard v. Banks*, 542 U.S. 406, 411 (2004) (citations and quotation omitted).

First, Reinhold's conviction became final in 1996. *See Kapral v. United States*, 166 F.3d 565, 572 (3d Cir. 1999) (stating that a conviction becomes final for *Teague* purposes "on the date the Supreme Court denies certiorari" or "the date the time for filing a timely petition for a writ of certiorari expires") (citations omitted). Next, we ask

10

whether the landscape at that time compelled the rule in *Cunningham*. *Id.* *Apprendi*, *Blakely*, and *Booker* were decided several years after 1996. *Cunningham* is certainly not "new" after those cases. Rather, *Cunningham* is a direct application of the basic rule laid down in those cases: using any fact not found by the jury to increase a sentence beyond the maximum sentence otherwise allowed violates the Sixth Amendment. In other words, *Cunningham* was compelled by *Apprendi* and *Blakely*. *Butler v. Curry*, 528 F.3d 624, 628 (9th Cir. 2008) (concluding "that the result in *Cunningham* was clearly dictated by the Supreme Court's Sixth Amendment case law, in particular *Blakely v. Washington*"). We have already held that *Apprendi* itself does not apply retroactively. *United States v. Swinton*, 333 F.3d 481 (3d Cir. 2003). The same is true of *Booker*. *Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005);[4] *see also Schriro v. Summerlin*, 542 U.S. 348 (2004) (rejecting retroactive applicability of *Ring*). It would seem plausible to conclude, were we to sidestep the *Teague* analysis, that if *Apprendi* itself is not applied retroactively then, *a fortiori*,

---

[4] Though we have not decided whether *Blakely* applies retroactively, it stands to reason that it would not, because "*Blakely* simply applied *Apprendi* to a different statutory scheme[.]" *Lloyd*, 407 F.3d at 612.

11

*Cunningham* should also be denied retroactive application. Reinhold's counsel conceded at oral argument that if *Cunningham* were merely an extension of *Apprendi*, then it would not be retroactively applicable. We appreciate counsel's candor. We proceed, nonetheless, with the *Teague* analysis and ask whether *Cunningham* is "new" when applied to a 1996 conviction.

We have no difficulty concluding that *Cunningham* is "new" for Reinhold's purposes. After "ascertain[ing] the legal landscape as it . . . existed" in 1996, which was pre-*Apprendi*, we conclude that "the Constitution, as interpreted by the precedent then existing," would not have compelled the rule in *Cunningham*. *Banks*, 542 U.S. at 411 (citation and quotation omitted). *Apprendi* itself undoubtedly established a new constitutional right when it was decided. *See Swinton*, 333 F.3d at 485. And, therefore, that right's further clarification in *Cunningham* (via *Blakely*) would not make it less "new" to the pre-*Apprendi* legal landscape. Thus, the rule announced in *Cunningham* was not "*dictated* by then-existing precedent" because the unlawfulness of relying on judge-found facts to raise a sentence above the otherwise-maximum-allowed sentence would not have been "apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997).

12

Finally, we ask whether the rule falls within one of two exceptions to the general rule of nonretroactivity. *Banks*, 542 U.S. at 411 (citation omitted). The parties agree that the first exception is not applicable.[5] The second *Teague* exception is "for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 417 (quotation omitted). "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Summerlin*, 542 U.S. at 352 (quotation omitted). The Supreme Court has repeatedly described this exception in the narrowest of terms. Since *Teague* was decided in 1989, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status." *Whorton v. Bockting*, 549 U.S. 406, 417 (2007). This is not surprising, because

---

[5] The first exception is for "rules forbidding punishment of certain primary conduct" or "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Banks*, 542 U.S. at 416–17 (quotation omitted). This type of rule is characterized as "substantive" rather than "procedural." *See id.* at 411 n.3, 416–17 & n.7; *Whorton v. Bockting*, 549 U.S. 406, 416 (2007).

a watershed rule is one that "alter[s] our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (quotation omitted). Thus, it is "unlikely that many such components of basic due process have yet to emerge." *Graham v. Collins*, 506 U.S. 461, 478 (1993).

The Supreme Court has considered and rejected the claim that a new rule prohibiting judicial fact finding at sentencing is a watershed rule. *Summerlin*, 542 U.S. at 355–58. In that case, the Court concluded that *Ring* is not retroactively applicable. Though many reasons can be marshaled to defend the practice of having the jury act as fact finder over a single judge, there is enough principled disagreement on the issue that "we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." *Id.* at 356. Moreover, this Court has said, rejecting the retroactive applicability of *Apprendi*, that its "application affects only the enhancement of a defendant's sentence after he or she has already been convicted by proof beyond a reasonable doubt." *United States v. Jenkins*, 333 F.3d 151, 154 (3d Cir. 2003). Judicial fact finding at the sentencing stage justifying a sentence beyond the otherwise applicable maximum, unconstitutional though it may be, "does not impair the jury's ability to find the truth regarding the defendant's involvement in the underlying

14

offense." *Id.* (citation omitted). Thus, *Apprendi* was not a watershed rule, one "implicating the fundamental fairness and accuracy of the criminal proceeding." *Banks*, 542 U.S. at 417 (quotation omitted).

The only case held up by the Supreme Court as the exemplar of a watershed rule is *Gideon v. Wainwright*, 372 U.S. 335 (1963). *See, e.g.*, *Banks*, 542 U.S. at 417; *Whorton*, 549 U.S. 419. *Gideon*, of course, held that an indigent defendant has the constitutional right to appointed counsel in a felony criminal case. The *Gideon* Court recognized that without a defense attorney present at a criminal trial, "the risk of an unreliable verdict is intolerably high." *Whorton*, 549 U.S. at 419 (citation omitted). The "noble ideal" of ensuring "fair trials before impartial tribunals in which every defendant stands equal before the law," *Gideon* said, "cannot be realized if the poor man charged with a crime has to face his accusers without a lawyer to assist him." *Gideon*, 372 U.S. at 344.

*Cunningham* is not *Gideon*. *Apprendi*, *Cunningham*'s lineal predecessor, did not announce a watershed rule when it invalidated judicial fact finding justifying an elevated sentence. *Ring* likewise did not announce a watershed rule when it invalidated judicial fact finding used to increase a sentence from life to death.

15

These principles are constitutionally indistinguishable from *Cunningham*'s requirement that a jury and not a judge find facts justifying the raising of a sentence from the middle term to the upper term in California's scheme. We hold that the rule announced in *Cunningham*, like *Apprendi*, "does not satisfy *Teague*'s second exception to non-retroactivity." *Swinton*, 333 F.3d at 491. *Cunningham* "has none of the primacy and centrality of the rule adopted in *Gideon*," *Saffle v. Parks*, 494 U.S. 484, 495 (1990), and thus is not applicable to Reinhold's sentence.

## III.

Reinhold filed his habeas petition within one year of the Supreme Court's decision in *Cunningham*. That case announced a rule that was not compelled by the Constitution as interpreted by the precedent existing at the time his conviction became final; it is "new" for Reinhold's purposes. However, *Cunningham* did not announce a watershed rule. Therefore, it is not retroactively applicable to convictions, like Reinhold's, that became final before it was decided. We will affirm the judgment of the District Court.