# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 18, 2007        Decided May 11, 2007

No. 06-3002

IN RE: OLUTOYIN O. FASHINA
PETITIONER

On Petition for Leave to File Second
or Successive § 2255 Habeas Petition
(No. 94cr00025-03)

*Peter S. Spivack*, appointed by the court, argued the cause for petitioner. With him on the briefs was *Christopher T. Handman*.

*Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for respondent. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese*, *III*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and TATEL, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Convicted of various drug-related offenses in 1994, Olutoyin Fashina petitions for leave to file a successive § 2255 habeas petition in which he contends his sentence was unconstitutional in light of *United States v.*

*Booker*, 543 U.S. 220 (2005). Fashina filed his first habeas petition prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and claims this request for leave therefore should be evaluated under the pre-AEDPA "cause and prejudice" standard; under the AEDPA, we may entertain a second or successive habeas petition only if it is based upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court."

We hold *Booker* does not apply retroactively. As a result, Fashina is not entitled to another habeas proceeding under the AEDPA and, more to his point, neither can he show the "cause and prejudice" required under pre-AEDPA law. We accordingly deny his petition.

## I. Background

In 1994 Fashina was indicted for (1) conspiracy to distribute and possession with intent to distribute 100 grams or more of heroin from October 1991 to March 1993, (2) distribution of over 100 grams of heroin on November 5, 1992, and (3) distribution and possession with intent to distribute over 100 grams of heroin on January 7, 1993. A jury acquitted him of the November 5 distribution charge and convicted him on the other counts. The jury made no finding as to the amount of drugs involved.

At sentencing the district court adopted the factual findings and the sentence recommended in the presentence investigation report, *see United States v. Badru*, 97 F.3d 1471, 1476-78 (D.C. Cir. 1996), which attributed to Fashina 14,007 grams of heroin, some of which had never been in his possession. Fashina argued unsuccessfully that the jury must have meant to attribute to him only the heroin he possessed on January 7, 1993, and his sentencing range under the Guidelines should be

correspondingly lower.  On appeal we affirmed his conviction and the sentence.  *Id.* at 1479.

In 1995 Fashina filed a habeas petition claiming ineffective assistance of counsel, which the district court denied; we affirmed that judgment as well.  In 2006 — after enactment of the AEDPA — Fashina sought leave to file a successive habeas petition, this time alleging, among other claims, that he was sentenced in violation of *Booker*.  We ordered briefing on the *Booker* claim and denied leave with respect to the other claims.

## II.  Analysis

Under the AEDPA, an appeals court may grant leave to file a second or successive motion for a writ of habeas corpus only if the motion is based upon either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.  Fashina concedes he meets neither of these standards.  *See In re Zambrano*, 433 F.3d 886, 888 (D.C. Cir. 2006) (noting Supreme Court has not made *Booker* retroactive to cases on collateral review).  Instead he maintains that because his motion meets the standards in effect before enactment of the AEDPA, that statute may not be applied retroactively to his case.  Unless the Congress has expressly made a statute retroactive, the courts do not apply it retroactively if doing so

"would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). The Government responds that Fashina cannot meet the pre-AEDPA standard and the AEDPA therefore may be applied without prejudice to him. *See United States v. Ortiz*, 136 F.3d 161, 166 (D.C. Cir. 1998).

Pre-AEDPA, if a prisoner raised a claim for the first time in a second or successive habeas petition and the Government, based upon his record of prior petitions, alleged he was abusing the writ, we would entertain the petition only if the prisoner showed "cause for failing to raise [the claim earlier] and prejudice therefrom." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Fashina contends he had "cause" for not raising his *Booker* claim in his initial petition because *Booker* had not yet been decided, and he suffers "prejudice therefrom" because application of *Booker* to his case would reduce his sentence. The Government counters that Fashina cannot show cause because he could have raised the issue when he filed his first petition, although the likelihood of success was then small, *see Bousley v. United States*, 523 U.S. 614, 622 (1998), and he cannot show prejudice because *Booker* is not retroactive.

We conclude Fashina cannot show "prejudice" because *Booker* is not retroactive and therefore we need not consider whether he has shown "cause." We recognize that prudence ordinarily dicates that we tackle nonconstitutional issues first, so that, if their resolution is dispositive, we need not reach the constitutional issue. *See, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997); *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). But the principle of avoidance is not an absolute; a court may invert the sequence in appropriate circumstances. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (qualified immunity analysis requires court first

to determine whether constitutional right was violated, and only if so whether right was clearly established); *Lockhart v. Fretwell*, 506 U.S. 364, 369 n.2 (1993) ("Harmless-error analysis is triggered only *after* the reviewing court discovers that an error [of constitutional law] has been committed"). In *Lambrix* itself the Supreme Court considered whether its decision in *Espinosa v. Florida*, 505 U.S. 1079 (1992), should be made retroactive, which required a "detailed analysis of federal constitutional law," although it could have remanded the case to the court of appeals to consider whether the claim was procedurally barred. 520 U.S. at 524. In doing so, the Court acknowledged that "[c]onstitutional issues are generally to be avoided," *id.*, but that did not mean

> the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the [retroactivity] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law.

*Id.* at 525. We believe it is likewise appropriate in the present circumstances to address retroactivity first. Similarly, in *McCoy v. United States*, 266 F.3d 1245, 1255-56 (11th Cir. 2001), the Eleventh Circuit, in the interest of judicial economy, first considered the possible retroactivity of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), rather than whether the petitioner was procedurally barred for failing to raise the *Apprendi* argument on direct appeal, because the retroactivity issue was then being raised in a plethora of habeas motions in that circuit.

In *Booker* the Supreme Court held the United States Sentencing Guidelines, if mandatory, would violate a defendant's Sixth Amendment right to have all facts necessary

to the imposition of a sentence found by a jury applying the reasonable doubt standard; the Court therefore construed the Guidelines as advisory. 543 U.S. at 244-45. The Government concedes that, if *Booker* has retroactive effect, then Fashina has shown prejudice because the district court increased his sentence based upon its understanding the Guidelines were mandatory and upon facts not found beyond a reasonable doubt by the jury. The question before us, therefore, is whether *Booker* is indeed to be applied retroactively. As established in *Teague v. Lane*, 489 U.S. 288 (1989), a decision announcing a new rule of law applicable to criminal cases is retroactive only if the rule is (1) substantive or (2) a "watershed" procedural rule. *See Whorton v. Bockting,* 127 S. Ct. 1173, 1180-81 (2007); *Schriro v. Summerlin*, 542 U.S. 348, 351-53 (2004). Fashina acknowledges that *Booker* announced a new rule, and we hold that neither exception to the general rule of nonretroactivity applies to make *Booker* retroactive.

A. Substantive Rule?

A new substantive rule

alters the range of conduct or the class of persons that the law punishes. In contrast, rules that regulate only the *manner of determining* the defendant's culpability are procedural. ... A decision that modifies the elements of an offense is normally substantive rather than procedural.

*Summerlin*, 542 U.S. at 353-54 (citations omitted). Fashina contends *Booker* is substantive because it made "the provisions of the Sentencing Guidelines that alter the applicable sentencing range based on the finding of a particular fact an element of the underlying crime that must be proved beyond a reasonable doubt to a jury." *See Jones v. United States*, 526 U.S. 227, 239-40

(1999) (reading provision enhancing maximum sentence in federal carjacking statute as element of crime, in part to avoid constitutional concern).

Fashina misapprehends the significance of *Booker*, however. If the Sentencing Guidelines were, as he claims, incorporated into the criminal code, then the Guidelines would be mandatory — the very opposite of what *Booker* holds. Instead, *Booker* merely requires that the sentencing judge consider the Guidelines. 543 U.S. at 261; *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006). In order to obtain a conviction and a particular sentence the Government need not prove anything after *Booker* that it did not have to prove before; therefore, *Booker* does not "alter[] the range of conduct ... the law punishes," *Summerlin*, 542 U.S. at 353, and is not a substantive rule. *See, e.g.*, *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005).

In addition, we note that even had the Guidelines remained mandatory after *Booker*, it would have meant only that certain facts previously found by the judge based upon a preponderance of the evidence would have to be found by the jury beyond a reasonable doubt. This would change "only the *manner of determining* the defendant's culpability" and the rule in *Booker* would still therefore be a procedural, not a substantive, rule. *Summerlin*, 542 U.S. at 353; *see also United States v. Gentry*, 432 F.3d 600, 603 (5th Cir. 2005); *McReynolds*, 397 F.3d at 480-81.

B. Watershed Procedural Rule?

A new procedural rule is a "watershed rule[] of criminal procedure," and therefore retroactive, only if it "implicat[es] the fundamental fairness and accuracy of the criminal proceeding." *Summerlin*, 542 U.S. at 352 (quoting *Saffle v. Parks*, 494 U.S.

484, 495 (1990)) (internal quotation marks omitted). "Infringement of the rule must 'seriously diminish the likelihood of obtaining an accurate conviction,' and the rule must 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001) (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990)) (other internal quotation marks omitted). Just recently the Supreme Court explained it is not sufficient for a new rule to be based upon a "bedrock" right; rather, the new rule "must itself constitute a previously unrecognized bedrock procedural element." *Whorton*, 127 S. Ct. at 1183. Hence it is not surprising that the class of "watershed" procedural rules is "extremely narrow"; so narrow, indeed, "it is 'unlikely' that any such rules 'ha[ve] yet to emerge.'" *Id.* at 1181 (quoting *Summerlin*, 542 U.S. at 352) (alteration in original) (other internal quotation marks omitted); in fact, the Supreme Court has not identified a single watershed procedural rule in the 18 years since it announced the doctrine, *id.* at 1182, though it has suggested the rule in *Gideon v. Wainwright*, 373 U.S. 335 (1963), requiring states to offer counsel to indigent criminal defendants, might have qualified as sufficiently "sweeping and fundamental" had the watershed standard then been in place. *Beard v. Banks*, 542 U.S. 406, 417-18 (2004).

Fashina contends *Booker* is on par with *Gideon* for two reasons: *Booker* implicates the right to a jury, which is "fundamental to our system of criminal procedure," *Summerlin*, 542 U.S. at 358; *see also Booker*, 543 U.S. at 238-39 (principles behind jury trial "have their genesis in the ideals our constitutional tradition assimilated from the common law"); and *Booker* "alters our understanding" of the scope of the reasonable doubt standard, a "bedrock procedural element" that implicates the accuracy of criminal proceedings. The Government correctly notes the Supreme Court rejected the former point in *Summerlin* when it said the "evidence is simply too equivocal"

to conclude that having judges rather than juries find facts seriously diminishes the accuracy of verdicts. 542 U.S. at 356; *see also, e.g.*, *Cirilo-Muñoz v. United States*, 404 F.3d 527, 533 (1st Cir. 2005) ("In our view, the use of judge-made findings at sentencing does not undermine 'accuracy' (in terms of substantially different outcomes) .... Such judge-made findings have been the conventional practice throughout our nation's history.")

As for Fashina's second point, we share his premise about the foundational role of the reasonable doubt standard of proof in criminal cases. As the Supreme Court said *In re Winship*, 397 U.S. 358, 363 (1970) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)), which held a juvenile is entitled to be judged by the reasonable doubt standard when charged with an act that would constitute a crime if committed by an adult:

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence — that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."

We also note that *Winship* was made retroactive, albeit prior to the Court's setting the current standard for retroactivity in *Teague*. *See Ivan V. v. City of New York*, 407 U.S. 203, 204-05 (1972).

Important as the reasonable doubt standard no doubt is, our task is to determine whether *Booker* works so "sweeping and fundamental" a change in its application as to constitute a watershed rule. As noted above, *Booker* alchemized mandatory

sentencing guidelines into advisory sentencing guidelines, which gave the judge greater discretion to depart from the sentencing range indicated by the Guidelines. *See, e.g.*, *Cunningham v. California*, 127 S. Ct. 856, 867 (2007) ("Under the system described in Justice Breyer's opinion for the Court in *Booker*, judges [are] no longer ... tied to the sentencing range indicated in the Guidelines"). Both before and after *Booker*, however, some factors relevant to sentencing are determined by the court applying the "preponderance of the evidence" standard, not proof beyond a reasonable doubt. *See Dorcely*, 454 F.3d at 371-72. In view of the continued importance of the Guidelines in sentencing after *Booker*, describing the pre-*Booker* "mandatory [G]uidelines as generating serious inaccuracy or fundamental unfairness would not be easy." *Cirilo-Muñoz*, 404 F.3d at 533; *see also Lloyd v. United States*, 407 F.3d 608, 615 (3d Cir. 2005); *Gentry*, 432 F.3d at 605. Fashina merely quibbles with this point when he argues that the regime of advisory Guidelines improves accuracy by giving the judge discretion to rely solely upon facts found by the jury beyond a reasonable doubt. To say the mandatory regime implicated "fundamental fairness" and "seriously diminished" accuracy relative to the advisory scheme would be to drain all meaning from the words "fundamental" and "seriously." *Cf. Whorton*, 127 S. Ct. at 1183-84; *Summerlin*, 542 U.S. at 355-56.

Fashina suggests this analysis proceeds from a misunderstanding of *Booker*. He reads *Booker* as having two parts; first, a rule, to wit, facts necessary to the imposition of a sentence under mandatory federal Sentencing Guidelines must be found by a jury beyond a reasonable doubt; and, second, a remedy, to wit, the Guidelines are not mandatory but merely advisory. *See Booker*, 543 U.S. at 245 (question of Guidelines severability "concerns the remedy"). On this reading it is the "rule" in *Booker* that, by broadening application of the reasonable doubt standard, implicates accuracy and fundamental

fairness, and therefore, pursuant to *Teague*, is retroactive; the "remedy" is irrelevant.

In order to determine whether the rule in *Booker* is one "without which the likelihood of an accurate [verdict] is seriously diminished," *Teague*, 489 U.S. at 313 (plurality opinion), we must compare the pre-*Booker* world to the present world in which *Booker* is the law. Fashina implicitly assumes we should compare the pre-*Booker* regime with the purely notional state in which the rule in *Booker* obtains but the remedy prescribed therein does not, so the Guidelines are mandatory and all facts relevant to sentencing must be proven beyond a reasonable doubt. We fail to see why we should base our analysis upon a hypothetical regime, one the Supreme Court considered but rejected in *Booker*, *see* 543 U.S. at 249-58, and Fashina gives us no reason to think otherwise. We therefore conclude, as have all our sister circuits, *Booker* does not meet the criteria for retroactive application.[*]

### III. Conclusion

In sum, *Booker* announced neither a substantive rule nor a

---

[*] *See Cirilo-Muñoz*, 404 F.3d at 532-33; *Guzman v. United States*, 404 F.3d 139, 141-44 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 731 (2005); *Lloyd*, 407 F.3d at 613-16, *cert. denied*, 126 S. Ct. 288 (2005); *United States v. Morris*, 429 F.3d 65, 66-67 (4th Cir. 2005), *cert. denied*, 127 S. Ct. 121 (2006); *Gentry*, 432 F.3d at 602-05; *Humphress v. United States*, 398 F.3d 855, 860-63 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 199 (2005); *McReynolds*, 397 F.3d at 481, *cert. denied*, 125 S. Ct. 2559 (2005); *Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (8th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119, 1121 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1181 (2006); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 312 (2005).

watershed rule of procedure and therefore is not retroactive; it follows that Fashina would not have been successful if, in his first habeas petition, he had claimed a *Booker* error — namely, that he was sentenced based upon facts not found by a jury beyond a reasonable doubt while the Guidelines were mandatory. Fashina therefore both fails to meet the pre-AEDPA requirements for relief from his procedural default and fails to show the AEDPA would be impermissibly retroactive as applied to him. Nor, as Fashina concedes, does he meet the requirements under the AEDPA for permission to file a successive § 2255 petition; his petition for leave to file is therefore

*Denied.*