In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-1944

BENARD MCKINLEY,

*Petitioner-Appellant,*

*v.*

KIM BUTLER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4190 — **John J. Tharp, Jr.**, *Judge.*

ARGUED OCTOBER 30, 2015 — DECIDED JANUARY 4, 2016

Before POSNER, RIPPLE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* In 2001, a 16-year-old named
Benard McKinley shot and killed a 23-year-old man, Abdo
Serna-Ibarra, as he tried to enter a Chicago park. Both were
with friends, and one of McKinley's friends, a 15-year-old
named Edward Chavera, may have handed McKinley the
gun. Whether or not he did, he told McKinley to shoot
Serna-Ibarra. McKinley obeyed, shooting him in the back,
and when Serna-Ibarra turned around with his hands raised

McKinley shot him again, killing him. Tried in an Illinois state court and convicted by a jury of first-degree murder, McKinley was sentenced to consecutive 50-year prison terms, one for the murder and one for the use of a firearm to commit it. See 730 ILCS 5/5-8-1(a)(1)(a), (a)(1)(d)(iii) (2004). With no good-time credit or other chance of early release permitted to persons sentenced for first-degree murder in Illinois, McKinley will be imprisoned for the full 100 years unless, of course, he dies before the age of 116. See 730 ILCS 5/3-3-2, 5/3-6-3(a)(2)(i). His accomplice, Chavera, pleaded guilty to second-degree murder and was sentenced to 17.5 years in prison.

After unsuccessfully seeking post-conviction relief in the Illinois court system, McKinley petitioned the federal district court in Chicago for a writ of habeas corpus, on the ground (so far as relates to the present appeal) that his sentence violated the federal Constitution. See 28 U.S.C. § 2254(a). The district court denied McKinley's petition, precipitating the appeal now before us.

To be allowed to press his claim in this court, however, he had to have pressed it in the state judicial system first, § 2254(b)(1)(A), and have made clear that it was indeed a federal constitutional claim that he was pressing. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). This requirement of exhaustion is designed on the one hand to marshal the assistance of the state courts in enforcing federal constitutional law and on the other hand to diminish the burden on the federal courts of post-conviction proceedings by state prisoners—a potentially crushing burden given the size of the state prison population and the understandable tendency of prisoners, especially those serving

long sentences, to pepper the courts with post-conviction petitions.

Beginning in 2008 McKinley filed in Illinois courts a post-conviction petition, a petition for relief from judgment, and a motion for leave to file a successive post-conviction petition. Most of the claims in these filings had no possible merit, were properly rejected, and require no discussion. He did however make one possibly meritorious claim, challenging the sentence as a "cruel and unusual punishment under th[e] constitution of state and federal laws." He had made a similar claim, without success, on direct appeal, describing the length of his sentence as excessive given his youth when he committed the murder, and thus as a violation of the Illinois Constitution's Proportionate Penalties Clause (as Article 1, § 11 of the Illinois Constitution is known), which provides, so far as might relate to this case, that "all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

All the petitions were rejected—the 100-year sentence stood—and so McKinley turned to the federal district court, invoking the federal habeas corpus statute. But he had failed to argue to the state courts on direct appeal that his prison sentence violated the cruel and unusual punishments clause of the Eighth Amendment, which the Supreme Court has made applicable to the states by interpretation of the due process clause of the Fourteenth Amendment. By failing to alert the state court to the possible presence of a federal claim, McKinley has forfeited the right to seek federal habeas corpus on the ground that his sentence violated the Eighth

Amendment, unless he can show that his failure to raise the claim in state court had been excusable.

In arguing that it had been, he places great weight on *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id*. at 2469. But the Illinois sentencing "scheme"—the statutory provisions cited earlier governing sentences for murder and for deadly use of a firearm—did not require that McKinley be sentenced to life in prison. He could have been sentenced to as little as 20 years for the murder plus 25 years for the deadly use of a firearm, for a total of 45 years. See 730 ILCS 5/5-8-4(a) (2004) (requiring the sentencing judge to impose consecutive sentences if "one of the offenses for which defendant was convicted was first degree murder"). There is more to *Miller*, however. The Supreme Court said that in deciding on a sentence for a minor (remember that McKinley was only 16 when he committed the murder) "we require [the sentencing judge] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller v. Alabama*, *supra*, 132 S. Ct. at 2469 (footnote omitted).

The sentencing judge in this case didn't do that. He said nothing to indicate that he considered the defendant's youth to have the slightest relevance to deciding how long to make the sentence. The only considerations he deemed relevant were that "the defendant had some type of juvenile adjudication for possession of [a] controlled substance, was in a [juvenile probation] program [that included counseling], and while in that program he committed this offense. I find that

to be an aggravating factor," and in fact "a serious aggravating factor." He further emphasized that there had been no provocation for the murder. He rejected the suggestion that "the defendant's criminal conduct was a result of circumstances unlikely to recur," explaining that "historically … his conduct indicated that the period of probation that he was given and the monitoring that he was given through Juvenile Court, really like your first chance scenario, was insufficient to deter the defendant from committing another offense." In short, "multiple factors in aggravation apply" and the 100-year sentence was "necessary to deter others from committing the same crime."

The judge thus did not consider the Supreme Court's "children are different" statement in *Miller*, or similar statements in earlier Supreme Court cases, notably *Roper v. Simmons*, 543 U.S. 551 (2005), where the Court had marshaled psychological evidence in support of its conclusion that to impose the death penalty on a minor was a per se violation of the Eighth Amendment. *Id.* at 569–75. (Neither of the cases we just cited had been decided when McKinley was sentenced in 2004.) The present case of course does not involve the death penalty. And as we noted earlier, neither is it a case involving a *mandatory* sentence of life in prison. The judge exercised his discretion in sentencing McKinley to a term of years, rather than to life.

But it is such a long term of years (especially given the unavailability of early release) as to be—unless there is a radical increase, at present unforeseeable, in longevity within the next 100 years—a *de facto* life sentence, and so the logic of *Miller* applies. The respondent (the warden of the prison in which the petitioner is held) wants to limit *Miller* to cases

in which the legislature decrees imprisonment for life, thus stripping the sentencing judge of any discretion to impose a shorter sentence in light of the particulars of the defendant and his crime. But the "children are different" passage that we quoted earlier from *Miller v. Alabama* cannot logically be limited to *de jure* life sentences, as distinct from sentences denominated in number of years yet highly likely to result in imprisonment for life. Cf. *Moore v. Biter*, 725 F.3d 1184, 1191–92 (9th Cir. 2013). The relevance to sentencing of "children are different" also cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary life sentences must be guided by consideration of age-relevant factors. See, e.g., *People v. Gutierrez*, 324 P.3d 245, 267–69 (Cal. 2014); *Ex Parte Henderson*, 144 So. 3d 1262, 1280, 1283–84 (Ala. 2013). Although our court said in *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014), that *Miller* is inapplicable even to a defendant sentenced to life without parole provided that the legislature does not require such a sentence but leaves the matter to the sentencing judge, the court did not discuss the "children are different" passage in *Miller*. That passage implies that the sentencing court must *always* consider the age of the defendant in deciding what sentence (within the statutory limits) to impose on a juvenile.

The judge in this case failed to do that. He said nothing to indicate that he thought the defendant's youth at all relevant to the sentence. He failed to mention that the defendant may not have been armed at the beginning of the mêlée that resulted in the murder—the gun used in the murder may have been handed to him by a confederate, and whether it was or not, it is certain that the confederate ordered him to shoot Serna-Ibarra. The judge should have considered whether, in

a situation of excitement, McKinley had the maturity to consider whether to obey his confederate's order, or was prevented by the circumstances from making a rational decision about whether to obey.

But there are obstacles to our reversing the denial of habeas corpus on the ground that the judge failed to consider the defendant's age. One is the failure of McKinley's lawyer in the state-court proceedings to assert a federal constitutional claim. But McKinley might be able to overcome this obstacle because his "constitutional claim is so novel that its legal basis [wa]s not reasonably available to counsel" at the time of the state court proceedings, for a subsequent Supreme Court decision (in this case, *Miller*) overturned "a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *Reed v. Ross*, 468 U.S. 1, 16–17 (1984) (quotations and citations omitted).

But that excuse is available only if the new constitutional principle "is held to have retroactive application," *id.* at 17, and that is a further obstacle to McKinley. The Supreme Court has been reluctant to allow prison inmates to base collateral attacks on their convictions or sentences on claims to retroactive application of federal constitutional principles. There are more than a million prison inmates in the United States, and every time the Supreme Court, or even a lower court, renders a decision that makes criminal law, whether substantive or procedural, more favorable to defendants, prisoners seek retroactive application of the decision. The federal courts could be overwhelmed were this permitted without limit. This concern has led the Supreme Court to confine retroactive application of procedural doctrines of

criminal law to doctrines that can be said to be "watersheds" in the law, see, e.g., *Whorton v. Bockting*, 549 U.S. 406, 416–20 (2007)—and only once has the Court found a watershed: the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963), that the defendant in a criminal case has a constitutional right to representation by counsel.

Recognizing the high bar that a procedural rule must surmount to be classified as "watershed," this court has concluded that neither *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines discretionary, nor *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which required that facts affecting mandatory minimum sentences be proved to a jury beyond a reasonable doubt, is retroactive, *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005); *Crayton v. United States*, 799 F.3d 623 (7th Cir. 2015), though both were very important decisions. But even in the unlikely event that *Miller*'s rule requiring judges to consider how "children are different" were to be deemed a "watershed" rule under federal law, McKinley's claim would fail in our court because it is premature.

To explain: the respondent (the warden) acknowledges that McKinley may have a remedy in state court because, as the warden tells us, "Illinois law allows a prisoner to file a successive postconviction petition if he shows cause for, and prejudice from, failing to raise the claim in an initial post-conviction petition." See 725 ILCS 5/122-1(f) (2015). In *People v. Davis*, 6 N.E.3d 709, 722 (Ill. 2014), the Illinois Supreme Court found that the defendant had satisfied this cause and prejudice test for his *Miller* claim because *Miller* had been unavailable to him either on direct appeal or in his initial post-conviction proceedings, and the court held that under

Illinois law it could be enforced retroactively on collateral review. The *Davis* decision thus gives the petitioner in the present case an available avenue for relief in state court for his claim.

Particularly important is the statement in *Davis* that *Miller* "applies retroactively to cases on collateral review" under Illinois law. *Id.* at 720. *Davis* holds that *Miller* is retroactive because it changed substantive rather than procedural law, and so is not controlled by the requirement that a procedural rule must be a "watershed" rule if it is to apply retroactively. *Id.* at 722. Indeed, a state is not required to have such a requirement at all. And although the Illinois Supreme Court has adopted the "standards for determining when a new constitutional rule would apply to federal habeas corpus actions pending in federal courts" to "collateral proceedings pursuant to the [Illinois] Post-Conviction Hearing Act" as a matter of state law, *id.* at 720, a state court is not required, when applying state law, to interpret those standards the same way as federal courts do.

McKinley like Davis had no opportunity to invoke *Miller* either in his direct appeal or in any of his state post-conviction proceedings. He had been convicted and sentenced in 2004 and his conviction and sentence had been affirmed in 2007. He filed his post-conviction petition in 2008, and that proceeding ended in 2011 when the Illinois Supreme Court denied review. *Miller* was not decided until 2012. So the Illinois state courts have had no opportunity to consider the bearing of *Miller* on the appropriateness of reconsidering McKinley's sentence. *Miller* speaks to the propriety of a life sentence for juveniles, and an Illinois court

might well believe as do we that the sentencing judge in this case utterly failed to consider that "children are different."

The state court might begin by reflecting on the considerations that should inform a decision on the length of a prison sentence. One is the need to prevent the defendant from committing crimes upon release; the likelier that he is to recidivate, the longer the appropriate sentence. Another pertinent consideration is the need to deter other potential criminals, who if rational will consider the length of the sentences being meted out to persons who commit crimes similar to the crimes these potential criminals commit or intend to commit; the longer the sentence, the greater the cost that the would-be criminals face. Last is the perceived need for long sentences for the most serious crimes, in order to assuage the indignation that such crimes arouse in the general public. But a defendant's youth and immaturity may influence consideration of each of these factors, because children have diminished culpability, greater prospects for reform, and less ability to assess consequences than adults. See *Miller v. Alabama*, *supra*, 132 S. Ct. at 2464–65.

Murder is of course one of the most serious crimes, but murders vary in their gravity and in the information they reveal concerning the likelihood of recidivism by the murderer. In the case of a 16-year-old kid handed a gun by another kid and told to shoot a designated person with it, it is difficult to predict the likelihood of recidivism upon his release from prison or to assess the deterrent effect of imposing a long sentence on him, without additional information. A competent judicial analysis would require expert psychological analysis of the murderer and also of his milieu. Does he inhabit a community, a culture, in which murder is rou-

tine? Are other potential murderers likely to be warned off murder upon learning that a 16-year-old kid has been sentenced to life in prison, or are they more likely to think it a fluke? Is the length of a sentence a major factor in deterrence? Given that criminals tend to have high discount rates, meaning that they weight future events very lightly, does it matter greatly, so far as deterrence is concerned, whether a murderer such as McKinley is sentenced to 20 years in prison or 100 years? And here is where *Miller* plays a role. It does not forbid, but it expresses great skepticism concerning, life sentences for juvenile murderers. Its categorical ban is limited to life sentences made mandatory by legislatures, but its concern that courts should consider in sentencing that "children are different" extends to discretionary life sentences and *de facto* life sentences, as in this case. A straw in the wind is that the Supreme Court vacated, for further consideration in light of *Miller*, three decisions upholding as an exercise of sentencing discretion juveniles' sentences to life in prison with no possibility of parole: *Blackwell v. California*, 133 S. Ct. 837 (2013); *Mauricio v. California*, 133 S. Ct. 524 (2013); *Guillen v. California*, 133 S. Ct. 69 (2012).

Neither *Miller*—which obviously had no bearing on the original sentencing of McKinley since it hadn't been decided yet—nor any of the questions raised in this opinion was addressed by the sentencing judge, who treated McKinley as if he were not 16 but 26 and as such obviously deserving of effectively a life sentence.

We therefore vacate the judgment of the district court and remand the case to that court with instructions to stay further consideration of McKinley's habeas corpus claim pending his filing of a successive post-conviction petition in

state court seeking resentencing on the basis of *Miller* and the concerns expressed in this opinion regarding the sentencing proceeding that resulted in a 100-year prison sentence for a 16-year-old.

SO ORDERED

Ripple, *Circuit Judge*, dissenting.

I agree with my colleagues that Mr. McKinley failed to raise his Eighth Amendment claim in state court. *See* Slip op. at 7. I disagree, however, that *Miller v. Davis*, 132 S. Ct. 2455 (2012), provides a basis for relief for Mr. McKinley, that *Miller* excuses his default, and that Mr. McKinley should have the opportunity to return to the Illinois courts to pursue a third post-conviction petition for relief.

In *Miller*, the Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 132 S. Ct. at 2460. Although we have not answered the question whether *Miller* should be applied retroactively to cases on collateral review, we held in *Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014), that, in cases like Mr. McKinley's where the defendant was sentenced to a *discretionary* life sentence, "*Miller* is inapplicable."

The majority acknowledges *Croft*, but distinguishes it. According to the majority, *Miller* did something more than establish a rule that a juvenile cannot be sentenced to a mandatory life sentence; *Miller* also established that "children are different," and, in sentencing them, state courts must acknowledge and give credence to this principle. Slip op. at 4–5. Our decision in *Croft*, they continue, "did not discuss the 'children are different' passage in *Miller*," and, therefore, does not bind this panel. Slip op. at 6.

Even if I could accept this characterization of *Croft*, the "'children are different' passage in *Miller*" does not provide a basis for returning Mr. McKinley to the state courts. As the majority acknowledges, the "children are different" statement in *Miller* has parallels "in earlier Supreme Court cases, notably in *Roper v. Simmons*, 543 U.S. 551 (2005),"[1] Slip. op. at 5, and also in *Graham v. Florida*, 130 S. Ct. 2011 (2010).[2] "Children are different," therefore, is not a new rule—either substantive or procedural—that justifies Mr. McKinley's failure to raise his Eighth Amendment claim in the state courts.

Moreover, *Roper* was handed down during the pendency of Mr. McKinley's direct appeal, and *Graham* was handed down during the pendency of Mr. McKinley's first petition for post-conviction relief (and prior to filing his motion for

---

[1] *See Roper v. Simmons*, 543 U.S. 551, 569–574 (2005) (discussing "[t]hree general differences between juveniles under 18 and adults" which "render suspect any conclusion that a juvenile falls among the worst offenders" and concluding that '[t]he differences between juvenile and adult offenders are too marked and well understood to risk allowing a youthful person to receive the death penalty despite insufficient culpability").

[2] *See Graham v. Florida*, 130 S. Ct. 2011, 2026, 2030 (2010) (explaining that "*Roper* established that because juveniles have lessened culpability they are less deserving of the most severe punishments" and concluding that "the limited culpability of juvenile nonhomicide offenders[] and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual").

leave to file a successive state post-conviction petition). Consequently, the principle that forms the basis of the majority's decision to return Mr. McKinley to the state courts was available to him during his first, second and third attempts at state-court relief. Mr. McKinley simply failed to invoke that principle.

The majority believes, however, that returning Mr. McKinley to the courts of Illinois is appropriate because those courts "have had no opportunity to consider the bearing of *Miller* on the appropriateness of reconsidering McKinley's sentence." Slip op. at 9. My colleagues posit that the Illinois courts may be willing to entertain Mr. McKinley's Eighth Amendment claim because, in *People v. Davis*, 6 N.E.3d 709, 722 (Ill. 2014), "the Illinois Supreme Court found that Davis had satisfied this cause and prejudice test for his *Miller* claim because *Miller* was unavailable to [Davis] either on direct appeal or in his initial post-conviction proceedings, and the court held that under Illinois law it could be enforced retroactively on collateral review." Slip op. at 8–9. The majority finds one remark in *Davis* "[p]articularly important": "that *Miller* is retroactive because it changed substantive rather than procedural law." *Id.* at 9.

As an initial matter, the Illinois courts have been deprived of this opportunity to consider the "children are different" argument only because Mr. McKinley failed to present it, not because the argument was unavailable to him. Furthermore, *Davis* provides little basis for concluding that the Illinois courts will look charitably on Mr. McKinley's late arguments. *Davis* concerned the sentencing of a juvenile defender to a *mandatory* sentence of natural life imprisonment. *Davis*, 6 N.E.3d at 714 ("Because defendant was found guilty

of murdering more than one victim, section 5-8-1(a)(1)(c)…*required* the trial court to sentence defendant to a term of natural life imprisonment, for which parole is not available….” (emphasis added)). Concluding that the defendant fell within the rule of *Miller*, the Supreme Court of Illinois went on to conclude that *Miller* should apply retroactively because it “places a particular class of persons covered by the statute—juveniles—constitutionally beyond the State’s power to punish with a particular category of punishment—*mandatory* sentences of natural life without parole.” *Id.* at 722. Because this new rule was substantive, the court continued, it “constitutes ‘cause’ because it was not available earlier to counsel and constitutes prejudice because it retroactively applies to defendant’s sentencing hearing.” *Id.* (citation omitted).

The state supreme court, however, also noted the limitation of this substantive rule: “We observe that *Miller* does not invalidate the penalty of natural life without parole for multiple murderers, only its *mandatory* imposition on juveniles. A minor *may still be sentenced to natural life imprisonment without parole so long as the sentence is at the trial court’s discretion rather than mandatory.*” *Id.* at 723 (second emphasis added) (citation omitted). Therefore, even if there were no procedural impediments to returning Mr. McKinley to state court, nothing in *Davis* suggests that, once there, Mr. McKinley could obtain the relief he seeks.

Although not directly stating so, today the majority both recognizes a new constitutional right and holds that it is cognizable on habeas review: the right of a juvenile not only to have the trial court explicitly consider age as a mitigating factor in sentencing, but also to have the sentencing court

consider specific information in that sentencing process. The majority also supplies the contours for this right. "A competent judicial analysis," my colleagues instruct, "would require *expert* psychological analysis" of both the juvenile offender and "his milieu." Slip op. at 10 (emphasis added). Sociological considerations also must enter the sentencing court's analysis; it must consider both whether "other potential murderers [are] likely to be warned off murder upon learning that a 16-year-old kid has been sentenced to life in prison" and whether it "matter[s] greatly" to them "whether a murderer such as McKinley is sentence to 20 years or 100 years." *Id.* at 10–11.

The majority's conception of sentencing for juvenile offenders may be a very salutary one. But it is not our prerogative to establish such standards on habeas review.

I therefore respectfully dissent.